IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA PLAINTIFF

v. No. 4:23-cr-54-DPM

KEITH MURRAY DEFENDANT

# ORDER

Are Murray's marijuana convictions serious drug offenses under the Armed Career Criminal Act? If they are, he must spend at least fifteen years in prison. If they aren't, the sentencing guidelines suggest around four or five years.

The deep issue is whether Arkansas's definition of marijuana at the time of his prior offenses was broader than the federal definition. *Brown v. United States*, 602 U.S. 101, 123 (2024). It seems simple, though it isn't. At the outset, the parties dispute which definition to use. There is "marijuana" in the ordinary sense. *E.g., United States v. Buckley*, 146 F.4th 679, 681 (8th Cir. 2025) (cocaine means cocaine). There's a statutory definition. Ark. Code Ann. § 5-64-101(n) (1995, 1996 & 2000). And there's Arkansas's Drug Schedule VI. Ark. Admin. Code 007.07.95--003, Sched. VI (1995, 1996 & 2000).

The statute Murray was convicted of violating three times didn't incorporate or mention the statutory definition. It didn't use the word

"marijuana." It criminalized "a controlled substance classified in Schedule VI." Ark. Code Ann. § 5-64-401(a)(4) (1995). *Buckley* doesn't govern. *Compare* 146 F.4th at 681–82. *United States v. Ferguson* does. 163 F.4th 541, 545 (8th Cir. 2026). The incorporated drug schedule definition is the proper one.

Federal law defined marijuana as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16) (1995, 1996 & 2000).

Schedule VI covered more. It included "[a]ny material, compound, mixture, or preparation, whether produced directly or indirectly from substances of vegetable origin, *or independently by means of chemical synthesis*, or by a combination of extraction and chemical synthesis, which contains any of the following substances, . . . " listing marijuana and tetrahydrocannabinols ("THC"). Ark. Admin. Code 007.07.95--003, Sched. VI (1995, 1996 & 2000) (emphasis added).

Federal law was limited to the plant. Arkansas law covered synthetic marijuana, too. See the Appendix for a side-by-side comparison.

The United States presses that there is no such thing as synthetic marijuana. *See* Ark. Code Ann. § 5-64-101(n) (1995, 1996 & 2000). Synthetic THC exists, says the Government, but marijuana is a plant.

The problem with this argument is twofold. Schedule VI unambiguously covers synthetic marijuana and synthetic THC. The Schedule says "following substances"—plural. Under the categorical approach, that settles the matter. *Ferguson*, 163 F.4th 545 n.2. Even if it didn't, the Government only offered argument, not proof, that synthetic marijuana doesn't exist. *Compare United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1150 (9th Cir. 2020). But again, this isn't a case where the Court can consider whether there was a realistic probability that Arkansas law criminalized synthetic marijuana because, reading Ark. Code Ann. § 5-64-401(a)(4) (1995, 1996 & 2000) and Schedule VI (1995, 1996 & 2000), it unambiguously did. *Gonzalez v. Wilkinson*, 990 F.3d 654, 659–61 (8th Cir. 2021).

The Court must harmonize all the Arkansas statutes *in pari materia*. *Hinojosa v. State*, 2009 Ark. 301, at 13, 319 S.W.3d 258, 265. If the dispute about Ark. Code Ann. § 5-64-401(a)(4) (1995, 1996 & 2000) and incorporated Schedule VI turned on the definition of marijuana, Ark. Code Ann. § 5-64-101(n)'s definition would be informative. But those defining words do not address Schedule VI's broad introductory section, which extends beyond the plant, making synthetic marijuana a controlled substance.

*

The parties made more arguments about whether Murray is an armed career criminal. The Court will briefly address three of them in turn.

Schedule VI includes salts, isomers, and salts of isomers of marijuana "whenever the existence of such salts, isomers, and salts of isomers is possible." Ark. Admin. Code 007.07.95--003, Sched. VI (1995, 1996 & 2000). Given the isomer issues with other drugs in other cases, that caught the Court's attention. *Doc. 46 at 3.* It turns out that 21 U.S.C. § 802(16) (1995, 1996 & 2000) doesn't mention isomers, but 21 U.S.C. § 812(c) (1995, 1996 & 2000) does. It contains the same language as Arkansas Schedule VI. So there is no isomer issue in this case.

Murray argues that his 1995 conviction for manufacturing marijuana is overbroad. Federal and Arkansas law define manufacturing as the production, preparation, propagation, compounding, or processing of a drug or other substance, but Arkansas adds conversion to the list, too. *Compare* 21 U.S.C. § 802(15) (1995), *with* Ark. Code Ann. § 5-64-101(m) (1995). The Court is unconvinced that Arkansas's addition of another term in a series of lawyers' words criminalizes any more conduct than federal law. If Murray's objection had rested on this argument, the Court would have overruled it.

Murray's other main argument is that, for his marijuana convictions to count as serious drug offenses, the Government had to

show that Arkansas's definition of every substance listed in Schedule VI wasn't broader than federal law. In 1995 and 1996, that was marijuana and TCH. In 2000, it also included gamma-hydroxybutyrate (commonly referred to as liquid ecstasy). See the Appendix. Because the Government didn't offer proof or argument on THC and liquid ecstasy, Murray continues, it hasn't carried its burden.

The key question is whether drug type is an element of the crime or a means to commit it. *E.g., Rincon v. Garland*, 70 F.4th 1080, 1084–86 (8th Cir. 2023). It's clear that drug type is in some ways an element, because the statute provides different penalties for different classes of drugs. Ark. Code Ann. § 5-64-401(a)(1) (1995, 1996 & 2000), for example, deals with controlled substances classified in Schedules I and II that are narcotic drugs or methamphetamine, while subsection (a)(3) deals with controlled substances classified in Schedules IV or V. Murray concedes that point. His argument is that drug type within each subsection is merely a means to commit that particular crime, not an element. This is a variation of an argument made in *Ferguson*, 163 F.4th at 545–46.

The Government offers several Arkansas cases referring to drug type as an element. *E.g., Prichard v. State*, 1990 WL 68646, at *1 (Ark. May 21, 1990) (unpublished *per curiam*); *Stout v. State*, 320 Ark. 552, 560, 898 S.W.2d 457, 462 (1995). The United States also points to cases where convictions involving the simultaneous possession of drugs within the

same subsection were affirmed without fuss. *E.g., Robelo v. State*, 2012 Ark. App. 425, 421 S.W.3d 329. Last, the United States notes that the relevant Arkansas Model Jury Instructions call for the drug type to be specified. Murray counters with *Pitts v. State*, where the Arkansas Supreme Court said in *dicta* that the simultaneous possession for delivery of drugs classified in the same subsection of the statute, "constitutes but one offense." 256 Ark. 693, 695, 509 S.W.2d 809, 811 (1974).

*Pitts* is the clearest word on the matter, but that word is not a holding. And the Arkansas Supreme Court's interpretation in *Pitts* doesn't appear to be how courts in Arkansas—including the Supreme Court and the Court of Appeals—generally construe Ark. Code Ann. § 5-64-401. This Court is skeptical that a defendant caught in 2000 with distributable amounts of marijuana and liquid ecstasy couldn't have been charged in separate counts. But because it is unnecessary for this Court to predict how Arkansas courts would answer this murky question, it declines to do so.

*

Are Murray's marijuana convictions serious drug offenses under the Armed Career Criminal Act? No. His objection to being designated as an armed career criminal in the presentence report is sustained. The United States' arguments to the contrary are preserved. The Court

directs the Probation Office to revise the report. The Court directs the Clerk to send a copy of this Order to the Probation Office.

So Ordered.

D.P. Marshall Jr.
United States District Judge

1 October 2026

## APPENDIX

| Federal Law, 21 U.S.C. § 802(16) | Ark. Admin. Code 007.07.95--003, Sched. VI* |
|---|---|
| The term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination. | (a) Any material, compound, mixture, or preparation, whether produced directly or indirectly from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, which contains any quantity of the following substances, or which contains any of their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation are included in Schedule VI:<br><br>(1) Marihuana<br><br>(2) Tetrahydrocannabinols<br>Synthetic equivalents of the substances contained in the plant, or in the resinous extractives of Cannabis, sp. and/or |

* Arkansas drug schedule VI was the same in 1995 and 1996. By 2000, it had been amended to include Gamma-hydroxybutyrate. Anything added by 2000 is highlighted in green.

| | |
|---|---|
| | synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity such as the following:<br><br>1 cis or trans tetrahydrocannabinol, and their optical isomers. Excluding dronabinol in sesame oil and encapsulated in a soft gelatin capsule in a drug product approved by the U.S. Food and Drug Administration.<br><br>6 cis or trans tetrahydrocannabinol, and their optical isomers.<br><br>3, 4 cis or trans tetrahydrocannabinol, and its optical isomers. (Since nomenclature of these substances is not internationally standardized, compounds of these structures, regardless of numerical designation of atomic positions covered.) |

| | |
|---|---|
| | (b) Gamma-hydroxybutyrate: also known as GHB, gamma-hydroxybutic acid, sodium oxybate, sodium oxybutyrate, gamrna-hydroxybutyrate sodium, famma-OH, 4-hydroxybutyrate, gamma-hydrate, somatomax PM, somasnit, and gamrnahidroxibutirato; is hereby designated a schedule VI drug. The Director of the Department of Health shall amend the Schedule VI list of controlled substances to include gamrna-hydroxybutyrate as a Schedule VI drug and it shall remain a Schedule VI drug.<br><br>(c) Provided, that the director shall not delete the controlled substances listed in this section from Schedule VI.<br><br>(d) Nothing in this act shall prohibit a physician from prescribing the drug GHB, if the physician is authorized to prescribe GHB under specific FDA exemptions for investigational research protocols.<br><br>Provided, that the Commissioner shall not delete the Controlled Substances listed in this Section from Schedule VI. |

| **21 U.S.C. § 812(c)** | |
|---|---|
| Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, or which contains any of their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation: <br><br> . . . <br><br> (10) Marihuana | |